IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CRESTON and AMY KING | : | |
| | : | |
| Plaintiffs, | : | Case No. 2:10-cv-01044 |
| | : | |
| v. | : | |
| | : | JUDGE GRAHAM |
| CITIMORTGAGE, INC. | : | |
| | : | MAGISTRATE JUDGE |
| Defendant. | : | DEAVERS |

Opinion and Order

This is a civil action brought by plaintiffs Creston and Amy King against CitiMortgage, Inc. The Kings assert a variety of claims for alleged statutory violations and common law offenses by CitiMortgage. They seek relief in the form of an injunction, declaratory judgment, and statutory and punitive damages. The alleged violations arise out of a purportedly fraudulent foreclosure proceeding that was brought against the Kings in state court by CitiMortgage. This matter is before the Court on CitiMortgage's motion to dismiss, which the Court grants for the reasons set forth below.

I.  **Background**

   A.  **Factual Allegations**

On February 4, 2010 CitiMortgage initiated a foreclosure action against Creston and Amy King in the Licking County Court of Common Pleas. The Kings allege that CitiMortgage falsely claimed it was the holder and owner of the note and mortgage covering their family home located at 1679 Riley Road, Newark, Ohio 43055. The Kings further contend that CitiMortgage's assertion of note and mortgage ownership was premised upon a false "Assignment of Mortgage" that CitiMortgage filed with the state court in the foreclosure action.

The Kings did not file an answer to the foreclosure action and on March 18, 2010, CitiMortgage moved for default judgment. The court granted the motion the same day and entered judgment against the Kings. The Kings allege that CitiMortgage filed a false and fraudulent "Affidavit of Status of Account and Military Affidavit" along with, and in support of, its motion for default judgment. On June 16, 2010, a sheriff's sale was ordered of the property and the Kings received a set out notice of November 5, 2010.

In their complaint, the Kings refer to a recently documented phenomenon in the mortgage industry known as "robo-signers." According to the complaint, "robo-signers" may sign 10,000 or more legal documents such as affidavits, assignments of mortgage, and others used in foreclosures. The Kings allege that employees of CitiMortgage regularly executed affidavits, assignments, and other legal documents necessary to process foreclosures, including the action against them, in this manner. As such, the Kings contend they have "reason to believe, and do believe" that the assignment and the affidavit used by CitiMortgage in support of its motion for default judgment in the state foreclosure action contained false and fraudulent statements.

In sum, the Kings assert that CitiMortgage's allegation that it was the holder of the note and mortgage was false and was meant to mislead the state court and the Kings into believing CitiMortgage had the right to foreclose on their property. They assert that the entire foreclosure action was contaminated by the fraud of CitiMortgage, pertaining to conduct encompassing the time period prior to, during and at all times after the termination of the foreclosure action.

**B.  Kings' Claims**

The Kings assert thirteen claims against CitiMortgage in this suit. Below is a summary of these claims.

Count I for violation of the Fair Debt Collection Practices Act alleges that the Kings are "consumers" as contemplated by 15 U.S.C. § 1692a(3) and that CitiMortgage is both a "creditor" and a "debt collector" as contemplated by 15 U.S.C. § 1692a(4) and (6), respectively. Furthermore, the Kings allege that CitiMortgage engaged in false and misleading representations as well as unfair practices, in violation of 15 U.S.C. § 1692e and § 1692f, respectively. They claim they have been damaged in an amount in excess of $75,000.00 as a direct and proximate result of said conduct by CitiMortgage.

Count II for violation of the federal Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961, et seq., alleges that CitiMortgage conducted its affairs through a pattern of corrupt activity and collection of unlawful debt.

Count III for violation of the Ohio Consumer Sales Practices Act alleges that CitiMortgage engaged in a pattern and practice of unfair, deceptive, and unconscionable actions in violation of O.R.C. §§ 1345.02, 1345.03, and/or 1345.031 by authorizing and directing the filing of an affidavit and assignment that were false and by pursuing the foreclosure action against the Kings despite their falsity.

Count IV for common law fraud alleges that Lindsey Semon, as an agent of CitiMortgage, signed the affidavit containing false representations material to the foreclosure proceedings. Semon allegedly did so with knowledge of the affidavit's falsity and with the intent of misleading the court. Further, agent Aaron Menne allegedly made false representations in the mortgage assignment with the intent of misleading the court.

Count V for abuse of process alleges that CitiMortgage set in motion a legal proceeding within a purported proper forum and with probable cause and then proceeded to engage in

3

conduct relating to the foreclosure action against the Kings that perverted the proceeding in an effort to accomplish an ulterior purpose for which the proceeding was not designed.

Count VI for civil conspiracy alleges that CitiMortgage engaged in a malicious combination involving at least two people or entities, that such malicious combination caused injury to the Kings and that an unlawful act independent from the conspiracy itself exists.

Count VII for declaratory judgment alleges that a justiciable controversy exists with respect to the issues of whether CitiMortgage was the holder and owner of the note and mortgage, whether the affidavit and assignment were executed in accordance with the law, and whether CitiMortgage was entitled to foreclose on the Kings' property. The Kings further allege in this count that it is necessary for the Court to determine these issues and declare the rights of the parties herein. The Kings contend that should this Court resolve either of the issues in the negative, it ought to declare the entire foreclosure action null and void and should set aside the default judgment entered against them.

Count VIII for rescission states the Kings' request to rescind the original mortgage agreement between them and CitiMortgage in light of the latter's alleged fraud.

Count IX for violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq., alleges that CitiMortgage accepted charges for the rendering of real estate services that were in fact charges for services other than those actually performed. The Kings seek treble damages under 12 U.S.C. § 2607(d)(2) for the charges that CitiMortgage allegedly improperly imposed upon the Kings as "settlement services."

Count X claims relief in the form of emergency temporary and permanent injunction to stop the eviction, alleging that the specific facts set forth in the complaint demonstrate the Kings

will suffer the irreparable injury, loss, and damage of the loss of their home if such relief is not granted.

Count XI for negligent supervision alleges that CitiMortgage had full and complete knowledge its employees were engaged in a widespread fraud, and despite such knowledge, did not take any action to remedy or stop such practices. The Kings allege that such tortious conduct is reckless and negligent.

Count XII for breach of the covenant of good faith and fair dealing alleges that CitiMortgage was obligated by either contract or common law to act in good faith and to deal fairly with the Kings, and that such duty owed to them was routinely breached.

Count XIII for violation of the Fair Credit Reporting Act alleges that CitiMortgage qualifies as a provider of information to the credit reporting agencies under 15 U.S.C. § 1681 et seq., and they wrongfully reported negative information as to the Kings, resulting in their having negative information on their credit reports and the lowering of their FICO scores.

### C. State Court Proceedings and Procedural Background

As described above, CitiMortgage filed a foreclosure action against the Kings on February 4, 2010 in Licking County, Ohio, Court of Common Pleas as a result of their default on a note and mortgage securing same. The Kings failed to make an appearance or file a response and a motion for default judgment in favor of CitiMortgage was granted and entered on March 18, 2010. The property was then sold by the Licking County Sheriff at a sale on August 13, 2010, to CitiMortgage who then assigned its bid to the Federal National Mortgage Association("Fannie Mae"). On September 15, 2010, the state court confirmed the sale, ordered the deed and distribution of the sale proceeds, and ordered that a writ of possession be awarded to Fannie Mae who filed a Praecipe for Writ of Possession on October 14, 2010.

On October 29, 2010, the Kings filed a Motion for Emergency Stay of Sheriff's Sale and a Motion for Relief from Judgment. At that time, the Kings asserted that the filing of such motion contained a clerical error and that they actually sought to stay a writ of possession, which had been issued on October 14, 2010. In support of such motion in state court, the Kings alleged various potential defects with the foreclosure process. That court reviewed the foreclosure complaint and the note, mortgage and assignments in support, and subsequently denied the Kings motion to stay, saying little more in its reasoning than the motion to stay was not well taken.

The Sheriff's Deed to Fannie Mae was recorded on November 16, 2010. On November 18, 2010, the Kings filed their complaint before this Court. On December 1, 2010, the Kings filed a Motion for Preliminary Injunction in an effort to prevent, at least temporarily, the foreclosure eviction that was scheduled to occur on December 8, 2010. In support of the motion for preliminary injunction, the Kings asserted that the default judgment entered against them was occasioned by fraud and that it was only in late October 2010, well after the default judgment in the state foreclosure proceeding had been entered and after they had the ability to assert any counterclaims, that they learned of CitiMortgage's fraudulent activities in prosecuting the foreclosure lawsuit. The Kings further represented they had offered and were prepared to pay defendants an amount in cash substantially the same as what they had owed on the mortgage. This Court, given the need to bring Fannie Mae in as a defendant and given the apparent likelihood the parties would successfully negotiate a settlement of the dispute, granted the request for temporary relief and enjoined the eviction proceeding for 30 days.

On February 10, 2011, this Court issued an order canceling the stay of eviction after finding that there was not a substantial likelihood that the parties would settle the case because the Kings' settlement offer was significantly less than what their counsel had represented to the

6

Court. Moreover, and as noted in the February 10, 2011 order, plaintiffs' counsel failed to file an amended complaint by January 6, 2011 adding Fannie Mae as a defendant, despite receiving leave of the Court to do so. In the February 10, 2011 order, the Court dismissed the count of the complaint seeking injunctive relief.

The case is now before this Court on CitiMortgage's motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim.

## II.  Rooker-Feldman Abstention

### A.  Standard of Review for Rule 12(b)(1)

In its motion to dismiss, CitiMortgage first argues that the Rooker-Feldman abstention doctrine applies and the complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. See Tropf v. Fidelity Nat'l Title Ins. Co., 289 F.3d 929, 936-37 (6th Cir. 2002) (construing Rooker-Feldman doctrine as a limitation on the court's jurisdiction).

Motions to dismiss for lack of subject matter jurisdiction fall into two categories: facial attacks and factual attacks. United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack goes to whether the plaintiff has properly alleged a basis for subject matter jurisdiction, and the trial court takes the allegations of the complaint as true. Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990). A factual attack is a challenge to the factual existence of subject matter jurisdiction. Id. No presumption of truthfulness applies to the factual allegations, and the court is free to take and weigh the evidence and satisfy itself as to the existence of its power to hear the case. Ritchie, 15 F.3d at 598.

The Court will construe the challenge here as a facial attack. The Rooker-Feldman abstention argument springs from the complaint itself. The complaint contains numerous

7

allegations about the state court foreclosure proceeding and about the various filings made in that action. The documents attached to CitiMortgage's motion to dismiss are either ones specifically referenced in the complaint or ones that were otherwise filed in the foreclosure action and which this Court may take judicial notice of. See Weiner v. Klais & Co., Inc., 108 F.3d 86, 89 (6th Cir. 1997); Lyons v. Stovall, 188 F.3d 327, 332 n. 3 (6th Cir. 1999).

### B.     Discussion

In support of its motion to dismiss, CitiMortgage contends that the King's complaint must be dismissed because this Court lacks subject matter jurisdiction to adjudicate the dispute pursuant to the Rooker-Feldman doctrine.

At its core, the Rooker-Feldman doctrine is a recognition that federal district courts are empowered to exercise only original, not appellate, jurisdiction. Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 283-87 (2005) (discussing Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)). In an effort to clarify its former rulings, the Court in Exxon held that the Rooker-Feldman doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. at 283.

One of the counts in the complaint squarely fits within the Rooker-Feldman doctrine. In their count for declaratory judgment, the Kings ask this Court to "declare the entire Foreclosure Action null and void" and to "set aside the default judgment entered against [them]." Compl. ¶ 56. Under Rooker-Feldman, this Court is without authority to grant such relief.

8

As to the rest of the complaint, the Court finds that it is not barred by Rooker-Feldman. This conclusion is guided by two Sixth Circuit decisions: McCormick v. Braverman, 451 F.3d 382, 392 (6th Cir. 2006) and Brown v. First Nationwide Mortgage Corp., 206 Fed. App'x 436, 440 (6th Cir. 2006). The court in McCormick held that Rooker-Feldman does not apply to state court-losers' claims arising from defendants' allegedly fraudulent conduct in procuring a state court judgment. 451 F.3d at 392. In Brown the court determined that the plaintiff's claims, which arose from the assertion that a mortgage foreclosure decree against him was procured by fraud, were not barred by Rooker-Feldman. 206 Fed. App'x at 440.

In McCormick, the plaintiff claimed that certain defendants committed fraud, misrepresentation and abuse of process during the course of divorce and probate proceedings. The court noted that none of these claims asserted an injury caused by the state court judgments, such as claims that the judgments were unconstitutional or in violation of federal law. Rather, the McCormick court said that the "[p]laintiff asserts *independent claims* that those state court judgments were procured by certain Defendants through fraud, misrepresentation, or other improper means . . . ." McCormick, 451 F.3d at 392. Even though those independent claims denied a legal conclusion of the state court, it did not divest the federal courts of subject matter jurisdiction. Id. Instead, preclusion law would be the appropriate legal mechanism to assess the plaintiff's independent claims. Id. The McCormick court found support for this proposition in Exxon: "'If a federal plaintiff present[s] some independent claims, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" Id. at 392-93 (quoting Exxon, 544 U.S. at 293 (internal quotation marks and citation omitted)).

9

It follows then, a district court's central task when determining the applicability of Rooker-Feldman is to distinguish between a claim that attacks a state court judgment and an independent claim, the latter in which jurisdiction may be asserted. Adopting a rule of thumb from the Fourth Circuit, the Sixth Circuit makes this determination by inquiring into the source of the injury the plaintiff alleges in the federal complaint: "If the source of the injury is the state court decision, then the Rooker-Feldman doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." McCormick, 451 F.3d at 393.

As such, this Court must determine the source of the injury for which the Kings seek redress. CitiMortgage contends that the source of the Kings' injury is the state court judgment foreclosing on their property, confirming the sale, and denying the stay of eviction. In their complaint, however, the Kings explicitly direct all allegations of misconduct at CitiMortgage and its agents Lindsay Semon and Aaron Menne. The Kings allege that the entire foreclosure action was "contaminated by the fraud of Defendant." Compl. ¶ 23. They also plainly state that their ". . . complaint concerns Defendants' fraudulent conduct before, during, and at all times after the termination of the Foreclosure Action." Id., at ¶ 25. Putting aside the counts for declaratory and injunctive relief (which did allege that the source of the injury was the state court judgment), the Kings do not directly attack the state court judgment rendered in the foreclosure action brought by CitiMortgage in the Licking County Court of Common Pleas, but instead assert independent claims based upon CitiMortgage's allegedly actionable misconduct committed in connection with its efforts to foreclose on the property.

In sum, the claims do not rest on the assertion that the state court incorrectly adjudicated the foreclosure action. The Kings do not contend that they were not in default on the note and

the mortgage. Rather, they contend that CitiMortgage engaged in fraud in pursuing the default judgment against them. The Kings have now brought independent claims alleging fraud and other misconduct by the defendants. As such, this Court finds the Rooker-Feldman doctrine inapplicable, except as to the claim for declaratory relief, and not a sufficient basis for the defendant's Rule 12(b)(1) motion to dismiss.

### III.     Sufficiency of the Pleadings

#### A.     Standard of Review under Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. Iqbal, 129 S.Ct. at 1949-50; Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Twombly, 550 U.S. at 555-56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949; see also Twombly, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked

11

assertion[s]" devoid of "further factual enhancements"); Papasan v. Allain, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." Twombly, 550 U.S. at 556 n.3. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S.Ct. at 1950.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S.Ct. at 1950. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. Though "[s]pecific facts are not necessary," Erickson, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," Twombly, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" Iqbal, 129 S.Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

**B.** **Issue Preclusion**

Issue preclusion, or collateral estoppel, "generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001); see also Montana v. U.S., 440 U.S. 147, 153 (1979). Thus, "[c]ollateral estoppel precludes relitigation of issues between parties or their privies previously determined by a court of competent jurisdiction." U.S. v. Vasilakos, 508 F.3d 401, 406 (6th Cir. 2007) (citing Montana, 440 U.S. at 153). Collateral estoppel serves to "shield litigants (and the judicial system) from the burden of re-litigating identical issues and to avoid inconsistent results." Gilbert v. Ferry, 413 F.3d 578, 580 (6th Cir. 2005) (citing 18 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4403 at 11-18).

In the Sixth Circuit, there are four requirements for the application of issue preclusion:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

Cobbins v. Tenn. Dep't of Transp., 566 F.3d 582, 589-90 (6th Cir. 2009).

Here, CitiMortgage contends that the issue of whether it was the holder of the note and mortgage and properly entitled to foreclose on the property as a result of the Kings' default was already litigated in the foreclosure action. They support this contention by noting that the mortgage, note, loan modifications (including one between CitiMortgage and the Kings), and the assignment of mortgages were all attached to CitiMortgage's foreclosure complaint, alleging that it was the holder entitled to enforce the mortgage and note.

13

After a thorough review of the foreclosure action record, for which this Court may take judicial notice of (see Weiner, 108 F.3d at 89), it is clear that the issue of CitiMortgage's ownership of the note was actually litigated and resulted in final judgment on the merits. By raising the ownership issue in the state court proceeding via their Motion for Relief from Judgment Pursuant to Civ. R. 60(B) and Motion to Stay the Sheriff's Sale, and by the subsequent ruling on those motions, the issue was expressly adjudicated. As such, and given that this issue was necessary to the outcome of the state-court proceeding and that the Kings had a full and fair opportunity to litigate this issue, it is barred.

CitiMortgage further contends that the issue of its alleged fraud and the alleged deficiencies in the assignment of mortgage and Ms. Semon's affidavit were in fact ultimately considered by the state court as well. In support of this theory, CitiMortgage refers to the Kings' Motion to Stay the Sheriff's Sale filed in state court on October 29, 2010, and that court's subsequent denial.

The Court finds that Kings made the exact same allegations regarding the veracity of the affidavit and assignment in their memoranda in support of the Motion to Stay and the Rule 60(B) Motion in state court as they do here. The state court denied these motions. As such, and for the same reasons mentioned above, the Kings are barred here from raising the issue of whether the assignment and affidavit contained materially false and fraudulent statements.

For the foregoing reasons, and because the issue of either note and mortgage ownership or truthfulness of the assignment and affidavit underlies each, Counts I (violation of the Fair Debt Collection Practices Act), II (violation of the federal RICO statute), III (violation of the Ohio Consumer Sales Practices Act), IV (common law fraud), VI (civil conspiracy), and XI (negligent supervision) all must be dismissed pursuant to the doctrine of issue preclusion.

### D. Sufficiency of the Claims that are not Precluded

#### 1. Abuse of Process

Count V of the complaint alleges abuse of process on the part of the CitiMortgage. According to the Kings, although CitiMortgage set in motion a legal proceeding within a purported proper forum and with probable cause, the proceeding was perverted by their actions in an effort to accomplish an ulterior purpose for which the proceeding was not designed. Ohio law provides that

> [t]he three elements of a claim for abuse of process are "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process."

Hershey, 187 Ohio App.3d at 410 (quoting Yaklevich v. Kemp, Schaeffer & Rowe Co., 68 Ohio St.3d 294, paragraph one of the syllabus (1994)). The Kings' claim lacks any allegation of an "ulterior purpose for which [the legal proceeding] was not designed[.]" Rather, they assert that the exact purpose of the foreclosure action, judgment in favor of CitiMortgage, was met.

Abuse of process concerns filing a lawsuit to achieve goals outside of the lawsuit or results that the court is powerless to order. It often takes the form of a coercive collateral advantage, "such as the surrender of property or the payment of money, by use of the process as a threat or a club." Robb v. Chagrin Lagoons Yacht Club, 75 Ohio St. 3d 264, 271 (Ohio 1996). Here, CitiMortgage allegedly filed the foreclosure action to recover judgment on the note and foreclosure on the secured property. The complaint fails to identify any ulterior purpose, and the abuse of process claim is dismissed.

#### 2. Violation of RESPA

In their ninth claim, the Kings allege that CitiMortgage violated 12 U.S.C. § 2607 of the Real Estate Settlement Procedures Act ("RESPA"). "In violation of 12 U.S.C. § 2607 and in

15

connection with the mortgage loan to Plaintiffs, Defendant accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed." Compl. ¶ 62. The Kings fail to allege any factual basis for the claimed RESPA violation, such as what the "charges" or "services" were. Moreover, RESPA has a one-year statute of limitations, 12 U.S.C. § 2614, but the complaint admits that the original loan closed in 1999. Thus CitiMortgage's motion is granted with respect to the RESPA claim.

### 3. Breach of Covenant of Good Faith and Fair Dealing

The Kings claim CitiMortgage breached the covenant of good faith and fair dealing in Count XII of their complaint. Ohio law generally does not recognize such claim as an independent cause of action. "[O]utside the insurance context, the breach of the duty of good faith does not exists as a separate cause of action from a breach of contract claim." Walton v. Residential Fin. Corp., 151 Ohio Misc.2d 28, 31 (Ohio Ct.Com.Pl. 2009) (citing Lakota Local School Dist. Bd. of Educ. v. Brickner, 108 Ohio App.3d 637, 646 (Ohio Ct. App. 1996)).

Even if the complaint could be understood as asserting that the duty of good faith was implied from the lending relationship between the Kings and CitiMortgage, the claim would still fail. A "special relationship" of trust and confidence, such as a fiduciary duty, must exist to establish a claim for breach of the covenant of good faith and fair dealing. See Lou Buch Associates, Inc. v. Sanyo Elec., Inc., 1989 WL 53381, *3 (6th Cir. May 22, 1989). Such a relationship is not alleged in the complaint, nor would the mortgagor-mortgagee arrangement between CitiMortgage and the Kings, without more, give rise to a fiduciary duty or special relationship. The complaint thus does not assert a breach of contract claim and Count XII must be dismissed.

16

### 4. Violation of the Fair Credit Reporting Act

In their thirteenth and final claim, the Kings allege a violation of the Fair Credit Reporting Act ("FCRA"). The complaint alleges that CitiMortgage provided negative information about the Kings to at least one credit reporting agency.

Only one provision of the FCRA applies to those who furnish credit information -- 15 U.S.C. § 1681s-2, which outlines a duty to provide accurate information to credit reporting agencies. However, the FCRA expressly prohibits any private causes of action based on a non-willful violation of § 1681s-2(a). See 15 U.S.C. § 1681s-2(c). Only governmental entities may enforce the duty to provide accurate information to credit reporting agencies. 15 U.S.C. § 1681s-2(a); Bach v. First Union Nat'l Bank, 149 Fed App'x 354, 358-59 (6th Cir. 2005); Girgis v. Countrywide Home Loans, Inc., 733 F. Supp. 2d 835, 849 (N.D. Ohio 2010).

The complaint does not allege a willful violation of the FCRA, but even if it did, the complaint fails to set forth that the Kings took the requisite step of giving notice to the credit reporting agency that they wished to dispute the information allegedly furnished by CitiMortgage. See 15 U.S.C. § 1681s-2(b); Downs v. Clayton Homes, Inc., 88 Fed. App'x 851, 853-54 (6th Cir. 2004); Girgis, 733 F. Supp. 2d at 849-50.

Thus, the claim under the FCRA is dismissed.

### E. Sufficiency of the Statutory Claims that are Precluded

For the statutory claims that are barred by issue preclusion, the Court finds in the alternative that they fail to state a claim for relief.

### 1. Violation of the Fair Debt Collection Practices Act

CitiMortgage first argues that the Kings' claim for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), must be dismissed because CitiMortgage is

not a debt collector. CitiMortgage correctly asserts that it is not a "debt collector" for purposes of the FDCPA and that such statute does not apply to this case. Under 15 U.S.C. § 1692a(6), the term "debt collector" expressly excludes from its definition "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." The complaint alleges that CitiMortgage was attempting to collect its own asserted debt when it brought the foreclosure action. Indeed, the complaint expressly admits that CitiMortgage was a creditor. Compl. ¶ 28. That the complaint denies that CitiMortgage actually held the mortgage note does not take CitiMortgage outside the definition of a creditor. Under Sixth Circuit case law, the creditor exclusion clause extends to those who attempt to collect a debt that they assert is owed to them. Montgomery v. Hungtington Bank, 346 F.3d 693, 699 (6th Cir. 2003) ("To this, the federal courts are in agreement: A bank that is a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts.") (internal quotation marks omitted). See also Miller v. Countrywide Home Loans, 747 F. Supp. 2d 947, 962 (S.D. Ohio 2010) (holding that mortgage lender was a creditor and not a debt collector under the FDCPA). While the Kings allege in their complaint that CitiMortgage is a "debt collector," more than mere legal conclusions and labels must exist to withstand a Rule 12(b)(6) motion to dismiss. Twombly, 550 U.S. at 557. The complaint contains no allegations of fact to support a plausible inference that CitiMortgage is a debt collector. Thus, the Kings' claim under the FDCPA is dismissed.

### 2. Violation of the Federal RICO Statute

Count 11 of the Kings' complaint alleges that CitiMortgage violated the Federal RICO statute. This claim is limited to one blanket, conclusory statement that merely recites the cause of action in the most general of terms. The Kings do not specify a particular RICO provision

18

that was allegedly violated, nor are any factual assertions made setting forth the elements of the claim that would raise the claimed right of relief above the speculative level. See Iqbal, 129 S.Ct. at 1949. The complaint fails to identify the "pattern" of corrupt activity or the "enterprise." As a result, CitiMortgage's motion to dismiss is granted with respect to Count II.

### 3. Violation of the Ohio Consumer Sales Practices Act

In Count III, the Kings allege that CitiMortgage violated O.R.C. § 1345 et seq., the Ohio Consumer Sales Practices Act ("CSPA"), by authorizing and directing the filing of the affidavit and assignment that were false and by pursuing the foreclosure action against the them in spite of the false affidavit and assignment.

The CSPA claim must be dismissed on the grounds that the law does not apply to the facts as alleged. The CSPA is limited to "consumer transactions." O.R.C. § 1345.01(A). That provision excludes from the definition of "consumer transaction" any transactions between persons, defined in O.R.C. § 5725.01, and their customers, subject to some exceptions which are not applicable to the instant case. CitiMortgage, as a subsidiary of Citigroup, is a "financial institution" pursuant to O.R.C. 5725.01(A)(3). See Reagans v. Mountainhigh Coachworks, Inc., 117 Ohio St. 3d 22, 30 (2008) (holding that a national bank was a financial institution and not subject to liability under the CSPA). As such, its actions as to the plaintiffs are not governed by the CSPA. Because the CSPA is not applicable to the facts alleged in the Kings' complaint, Count III must be dismissed.

19

## IV. Conclusion

For the foregoing reasons, defendant CitiMortgage's Motion to Dismiss (Doc. # 17) is hereby GRANTED and the complaint is DISMISSED in its entirety.

The clerk shall enter final judgment in favor of the defendant dismissing plaintiffs' complaint with prejudice at plaintiffs' costs.

IT IS SO ORDERED.

s/ James L. Graham  
JAMES L. GRAHAM  
UNITED STATES DISTRICT JUDGE

DATE: July 20, 2011